# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **EDWARD T. KISER,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:04cv00096 |
| ) | **MEMORANDUM OPINION** |
| ) | |
| ) | |
| **JO ANNE B. BARNHART**, ) | |
| **Commissioner of Social Security,** ) | By:   P<small>AMELA</small> M<small>EADE</small> S<small>ARGENT</small> |
| Defendant ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Edward T. Kiser, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Kiser filed an initial application for DIB on March 23, 1999, alleging disability as of January 16, 1999.[1] (Record, ("R."), at 23.) The claim was denied initially and upon reconsideration. (R. at 23.) Kiser requested a hearing before an administrative law judge, ("ALJ"), but requested that the hearing be dismissed. (R. at 23, 39-41.) The ALJ dismissed the claim by Order dated December 22, 1999. (R. at 39-41.)

The record shows that Kiser again filed his applications for DIB and SSI on or about October 29, 2002, alleging disability as of January 11, 1999, based on asthma and "nerve" problems . (R. at 57-59, 69, 191-95.) Kiser's claims were denied both initially and on reconsideration. (R. at 44-46, 49, 50-52.) Kiser requested a hearing before an ALJ. (R. at 53.) The ALJ held a hearing on February 3, 2004, at which Kiser was represented by counsel. (R. at 225-53.)

By decision dated February 17, 2004, the ALJ denied Kiser's claims. (R. at 20-

---

[1]A copy of this DIB application is not contained in the record.

32.) The ALJ found that Kiser met the disability insured requirements of the Act through the date of the decision for disability purposes. (R. at 30.) He further found that Kiser had not engaged in substantial gainful activity since January 16, 1999. (R. at 31.) The ALJ found that the medical evidence established that Kiser's asthma and obesity were severe impairments, but he found that Kiser did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 31.) The ALJ further found that Kiser's allegations regarding his limitations were not totally credible. (R. at 31.) The ALJ concluded that Kiser retained the residual functional capacity to perform light work[2] that did not require frequent bending, stooping and crouching and which avoided working around dust, fumes, pollen, smoke and perfumes. (R. at 31.) The ALJ also found that Kiser was unable to perform any of his past relevant work. (R. at 31.) Based on Kiser's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed that Kiser could perform. (R. at 31.) Therefore, the ALJ found that Kiser was not disabled as defined by the Act and was not eligible for benefits. (R. at 31-32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2004).

After the ALJ issued this decision, Kiser pursued his administrative appeals, (R. at 16, 18), but the Appeals Council denied his request for review. (R. at 5-9, 10-13.) Kiser then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981,

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2004).

416.1481 (2004). The case is before this court on Kiser's motion for summary judgment filed April 1, 2005, and the Commissioner's motion for summary judgment filed April 22, 2005.

## *II. Facts*

Kiser was born in 1963, (R. at 57, 230), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Kiser completed the ninth[1] grade and has past relevant work experience as a brick layer, a security officer, a machine operator and a general laborer. (R. at 70, 75, 78, 99, 230-31.)

At his hearing, Kiser testified that he weighed about 341 pounds and was six feet, three inches tall. (R. at 230.) He stated that he had asthma as a child and that the symptoms returned in 1999. (R. at 239.) He stated that he was exposed to formaldehyde while working at Bush Industries and that he believed this is what caused his breathing problem. (R. at 239.) Kiser testified that he used a nebulizer with Albuterol every four to six hours. (R. at 240.) Kiser stated that the medications prescribed by his doctors helped quite a bit, but that they made him nervous. (R. at 241.) He testified that he would experience shortness of breath regardless of whether he was sitting or standing. (R. at 242-43.) Kiser stated that walking caused him to have an asthma attack. (R. at 243.) He testified that he started to smother after walking 40 yards at a normal pace. (R. at 243.) Kiser testified that he could stand for up to 30 minutes without interruption and could sit for up to one hour without interruption. (R. at 244.) Kiser stated that he suffered from sleep apnea. (R. at 244-

---

[3]Kiser reported on his Disability Report that he completed the tenth grade. (R. at 75.) However, he testified at his hearing that he completed the ninth grade. (R. at 230-31.)

45.) He testified that he had to sleep most of the day. (R. at 245.)

Vocational expert Cathy B. Sanders testified at Kiser's hearing. (R. at 248-52.) She was asked to assume an individual of Kiser's age, education and work experience, who had the residual functional capacity to perform light work according to the consultative examination performed by Dr. Chris Newell, M.D. (R. at 150-51, 250-51.) Sanders stated that there would be jobs available that such an individual could perform, including jobs as an information clerk, an interviewer and a desk clerk. (R. at 250-51.) She stated that the same such jobs would be available should the individual have the limitations indicated in state agency psychiatrist Joseph Leizer's assessment dated May 27, 2003. (R. at 130-43, 251.) Sanders reported that there would be no jobs available based on Kiser's testimony of using an inhaler and having difficulties walking very short distances. (R. at 251-52.) She stated that Kiser had no transferrable skills from his previous work experience. (R. at 249-50.)

In rendering his decision, the ALJ reviewed records from Dr. Donald R. Williams, M.D., a state agency physician; Carol Looney, F.N.P., a family nurse practitioner; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Chris Newell, M.D.; Dr. Joseph F. Smiddy, M.D.; Jennifer Elswick, C.F.N.P., a family nurse practitioner; Dr. Norman Ratliff, M.D.; Dr. William A. Nuckols, M.D.; Dr. Mark O'Brien, M.D.; and Dr. Bruce S. Grover, M.D. Kiser's counsel also submitted additional medical records from Stone Mountain Health Services and The Clinic to the Appeals Council.[2]

---

[2]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-9, 10-13), this court also should consider this evidence in determining whether

-5-

The medical evidence shows that Kiser saw Dr. Norman Ratliff, M.D., from May 15, 1998, to November 22, 1999. (R. at 255, 270.) During this time, he was diagnosed with bronchitis and prescribed several medications such as Amoxil, Singulair and Albuterol. (R. at 255, 270.)

On April 14, 1999, Kiser saw Dr. Mark O'Brien, M.D., for complaints of shortness of breath and asthma attacks. (R. at 124-25, 266-67.) Dr. O'Brien reported that Kiser had no wheezes on forced expiration and good air entry in his chest; however, he did have slightly prolonged expiration. (R. at 124, 266.) He diagnosed Kiser with possible asthma. (R. at 124, 266.)

On March 6, 2002, Kiser saw Carol Looney, F.N.P., a family nurse practitioner, for complaints of asthma attacks, wheezing, shortness of breath and panic attacks. (R. at 121-23.) Looney reported that Kiser was obese and diagnosed him with dyspnea, asthmatic bronchitis and panic disorder. (R. at 122-23.) On April 18, 2002, Kiser reported symptoms of anxiety and depression, but stated that his breathing was doing well. (R. at 119.) Looney diagnosed asthma, hypertension and hyperlipidemia. (R. at 119.) On September 4, 2002, Kiser reported that his asthma had improved; however, he complained that Paxil was not working. (R. at 117.) His mood and affect were reported as good. (R. at 117.) His judgment and insight also were reported as good. (R. at 117.) Looney diagnosed Kiser with uncontrolled hypertension and asthmatic bronchitis. (R. at 117.) She increased his Paxil dosage and prescribed Diovan. (R. at

---

substantial evidence supports the ALJ's findings. *See Wilkins v. Secretary of Dept. of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

117.) On September 11, 2002, Kiser reported that his breathing had greatly improved. (R. at 114.) Looney diagnosed him with hypertension, increased his Diovan dosage and encouraged exercise. (R. at 114.) On October 11, 2002, Kiser complained of shortness of breath, a cough, soreness on the left side of his neck and left ear pain. (R. at 111-12.) He was diagnosed with acute bronchitis and bronchospasms. (R. at 111.) On March 7, 2003, Kiser again complained of shortness of breath, some depression and fluid retention. (R. at 109.) He reported that he had discontinued using Paxil and that he was doing okay. (R. at 109.) He stated that he would become "a little bit depressed, but not anything severe." (R. at 109.) His recent and remote memory was intact and his mood and affect was reported as good. (R 109.) Looney diagnosed him with edema, asthmatic bronchitis and hypertension. (R. at 109.)

On June 24, 2003, Kiser complained of smothering and occasional white, thick phlegm production. (R. at 161.) Kiser was diagnosed with asthmatic bronchitis, chronic obstructive pulmonary disease and hypertension. (R. at 161.) Looney advised Kiser to continue with his medications and referred him to a pulmonologist. (R. at 161.) On December 22, 2003, Looney saw Kiser for complaints of heart palpitations. (R. at 199.) Looney diagnosed palpitations and hypertension. (R. at 203.) On January 21, 2004, Kiser complained of chest tightness, congestion and cough. (R. at 200.) He reported that Paxil gave him headaches. (R. at 200.) Examination showed some scattered rhonchi. (R. at 200.) Looney diagnosed acute bronchitis, and she prescribed him Prozac. (R. at 200.) On March 8, 2004, Kiser complained of chest congestion and cough. (R. at 220.) Examination of Kiser's chest showed rhonchi throughout his lung field. (R. at 220.) Looney diagnosed acute bronchitis and wheezing. (R. at 220.)

On May 17, 1999, Kiser saw Dr. William A. Nuckols, M.D., for an evaluation

of an alleged respiratory impairment. (R. at 256-59.) Dr. Nuckols reported that Kiser was obese. (R. at 257.) Dr. Nuckols reported no wheezes or rhonchi within Kiser's lungs. (R. at 257.) A chest x-ray revealed no active disease. (R. at 258, 261.) Pulmonary function studies were performed and showed mild obstructive lung disease with clinical response to bronchodilator therapy. (R. at 258, 260, 262-63.) Kiser was diagnosed with mild chronic obstructive pulmonary disease and exogenous obesity. (R. at 258-59.)

On February 24, 2003, Dr. Donald R. Williams, M.D., a state agency physician, completed an assessment indicating that Kiser had the residual functional capacity to perform medium work.[4] (R. at 101-08.) There were no postural, manipulative, visual or communicative restrictions placed on Kiser's work-related abilities. (R. at 103-05.) Dr. Williams indicated that Kiser should avoid moderate exposure to fumes, odors, dusts, gases and poor ventilation. (R. at 105.) Dr. Williams indicated that Kiser's complaints were not fully credible. (R. at 103.) This assessment was affirmed by Dr. Frank M. Johnson, M.D., another state agency physician, on May 23, 2003. (R. at 108.)

On May 27, 2003, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Kiser suffered from a nonsevere affective disorder. (R. at 130-43.) Leizer concluded that Kiser had no restrictions in his activities of daily living, no difficulties in maintaining social functioning, no deficiencies of concentration, persistence or pace and had experienced

---

[4] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2004).

no episodes of decompensation. (R. at 140.)

On July 2, 2003, Kiser was evaluated by Dr. Joseph Smiddy, M.D., for complaints of wheezing, coughing, sputum production, obesity, orthopnea and history of asthma. (R. at 154-55.) A chest x-ray revealed slight prominence of markings, and no bony, vascular or definite cardiac abnormalities were noted. (R. at 155, 157.) The x-ray also showed the possibility of a hiatus hernia. (R. at 155, 157.) A pulmonary function test was performed, which indicated a significant obstructive ventilatory defect. (R. at 155, 160.) Dr. Smiddy diagnosed Kiser with asthma, chronic bronchitis, obesity and hypertension and occult sleep apnea was not excluded. (R. at 155.) Kiser was told to continue Albuterol, Ipratropium and Singulair and to begin taking Azmacort. (R. at 155.) On September 2, 2003, Kiser continued to complain of coughing, wheezing and shortness of breath. (R. at 152-53.) Dr. Smiddy's diagnosis remained the same. (R. at 152-53.) A chest x-ray showed minimal old granulomas. (R. at 156.) Kiser was advised to lose weight and avoid asthma triggers. (R. at 153.) On November 7, 2003, Kiser reported feeling better and Dr. Smiddy reported that Kiser's lungs sounded clearer. (R. at 172-73.)

On September 19, 2003, Kiser saw Dr. Bruce S. Grover, M.D., for complaints of frequent snoring, shortness of breath, cough and wheezing. (R. at 182-87.) Dr. Grover diagnosed obstructive sleep apnea syndrome manifested by frequent hypopneas and upper airway resistance and significant hypoxemia with frequent mild-to-moderate desaturations. (R. at 182.) On October 24, 2003, Dr. Grover performed a sleep study. (R. at 174-81.) He diagnosed obstructive sleep apnea syndrome. (R. at 174.)

On October 2, 2003, Kiser was evaluated by Dr. Chris Newell, M.D., for his complaints of asthma. (R. at 145-49.) Dr. Newell reported that Kiser's chest was clear, with no rhonchi or wheezes. (R. at 147.) Dr. Newell reported that Kiser could stand and walk four to six hours in an eight-hour workday and that he could sit six to eight hours in an eight-hour workday. (R. at 147, 150.) He reported that Kiser could frequently lift and/or carry items weighing up to 10 pounds and occasionally lift and/or carry items weighing up to 20 pounds. (R. at 147, 150.) Dr. Newell placed no limitations on Kiser's ability to sit or to push and pull. (R. at 150.) He reported that Kiser could occasionally bend, kneel, stoop, crouch, balance and climb and that he should avoid working around poor ventilation, temperature extremes, chemicals, dust, fumes, odors and gases. (R. at 151.) He reported that Kiser should avoid triggers for his shortness of breath such as dust, fumes, pollens and smoke. (R. at 147-48.)

On March 22, 2004, Kiser saw Jennifer Elswick, C.F.N.P., for allergy testing. (R. at 207-17.) The testing showed that Kiser was allergic to trees, silk, dust mites and cockroaches. (R. at 208.) Pulmonary function tests were performed indicating that Kiser had a partially reversible obstructive ventilatory pattern. (R. at 208, 210-11.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2004); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1)

is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920 (2004). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2004).

By decision dated February 17, 2004, the ALJ denied Kiser's claims. (R. at 20-32.) The ALJ found that the medical evidence established that Kiser's asthma and obesity were severe impairments, but he found that Kiser did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 31.) The ALJ further found that Kiser's allegations regarding his limitations were not totally credible. (R. at 31.) The ALJ concluded that Kiser retained the residual functional capacity to perform light work that did not require frequent bending, stooping and crouching and which avoided working around dust, fumes, pollen, smoke and perfumes. (R. at 31.) The ALJ also found that Kiser was unable to perform any of his past relevant work. (R. at 31.) Based on Kiser's age, education, work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that other jobs existed that Kiser could perform. (R. at 31.) Therefore, the ALJ found that Kiser was not disabled as defined by the Act and was not eligible for benefits. (R. at 31-32.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2004).

In his brief, Kiser argues that the ALJ's decision is not supported by substantial evidence. (Motion For Summary Judgment And Memorandum Of Law On Behalf Of

-11-

The Plaintiff, ("Plaintiff's Brief") at 5.) In particular, Kiser argues that the ALJ erred by failing to find that his anxiety, depression and sleep apnea were severe impairments. (Plaintiff's Brief at 6-7.) Kiser also argues that the ALJ erred by failing to properly consider the combined effect of all of his impairments on his ability to work. (Plaintiff's Brief at 7-8.) Kiser argues that the ALJ erred by failing to consider the impact of his obesity on his ability to work. (Plaintiff's Brief at 8.) Kiser further argues that the ALJ erred by citing records in his decision which are not contained in the transcript. (Plaintiff's Brief at 5-6.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from

-12-

Case 2:04-cv-00096-PMS   Document 18   Filed 07/22/05   Page 12 of 16   Pageid#: 72

a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Kiser argues that the ALJ erred by finding that his anxiety, depression and sleep apnea were not severe impairments. I disagree. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2004). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2004). The Fourth Circuit held in *Evans v. Heckler*, that """[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.""" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

Although Kiser complained that he had nervousness and difficulty concentrating, he has never required ongoing treatment, counseling, referral to a mental health specialist or hospitalization for mental health problems. The record shows that in September 2002, Looney reported that Kiser's mood and affect were good, as well as his judgment and insight. (R. at 117.) In March 2003, Kiser reported

that he had discontinued using Paxil and that he was doing okay. (R. at 109.) He stated that he would become "a little bit depressed, but not anything severe." (R. at 109.) His recent and remote memory was intact and his mood and affect were reported as good. (R. at 109.) In May 2003, Leizer reported that Kiser suffered from a nonsevere affective disorder. (R. at 130.) He reported that Kiser had no restrictions in his activities of daily living, no difficulties in maintaining social functioning, no deficiencies of concentration, persistence or pace and that he had experienced no episodes of decompensation. (R. at 140.) I also note that no physician has placed any restrictions on Kiser's work-related abilities as a result of his sleep apnea.

Based on my review of the record, I also find that substantial evidence supports the ALJ's finding that Kiser has the residual functional capacity to perform light work that does not require frequent bending, stooping and crouching and which avoids working around dust, fumes, pollen, smoke and perfumes. (R. at 31.) The record shows that in in May 1999, Dr. Nuckols's examination showed no wheezes or rhonchi within Kiser's lungs. (R. at 257.) Pulmonary function studies showed only mild obstructive lung disease with a clinical response to bronchodilator therapy. (R. at 258, 260, 262-63.) In March 2002, Kiser's physical examination was normal, except for a prolonged expiratory phase with wheezing but with adequate air entry. (R. at 122.) In April 2002, Kiser reported that his breathing was "doing real well." (R. at 119.) His pulse oxygen level was 95 percent on room air. (R. at 119.) In September 2002, Kiser reported that his breathing had greatly improved since he had been on medication. (R. at 114, 117.) His chest had a few scattered rhonchi with adequate air entry and equal excursion bilaterally, which was negative to palpation and percussion. (R. at 117.) In March 2003, Kiser's physical examination revealed that his chest was clear to

ascultation, percussion and palpation with equal excursion bilaterally. (R. at 109.) His pulse oxygen was 96 percent on room air. (R. at 109.) In June 2003, Kiser reported that his nebulizer treatments had really helped his breathing. (R. at 161.) His pulse oxygen was 96 percent on room air. (R. at 161.) In September 2003, Dr. Smiddy advised Kiser to lose weight and to avoid asthma triggers. (R. at 153.)

In October 2003, Dr. Newell reported that Kiser's lungs were clear, with no rales, rhonchi, wheezes or retractions. (R. at 147.) In November 2003, Kiser reported feeling better. (R. at 173.) Dr. Newell reported that Kiser could stand and walk four to six hours in an eight-hour workday and that he could sit six to eight hours in an eight-hour workday. (R. at 147, 150.) He reported that Kiser could frequently lift and/or carry items weighing up to 10 pounds and occasionally lift and/or carry items weighing up to 20 pounds. (R. at 147, 150.) Dr. Newell placed no limitations on Kiser's ability to sit or to push and pull. (R. at 150.) He reported that Kiser could occasionally bend, kneel, stoop, crouch, balance and climb and that he should avoid working around poor ventilation, temperature extremes, chemicals, dust, fumes, odors and gases. (R. at 151.) He reported that Kiser should avoid triggers for his shortness of breath such as dust, fumes, pollens and smoke. (R. at 147-48.) Dr. Newell noted that he had considered Kiser's obesity in his physical assessment limiting him to light work. (R. at 150-51.) Dr. Newell noted that Kiser walked with a normal gait. (R. at 146.) In addition, Dr. Williams found that Kiser had the residual functional capacity to perform medium work and that he should avoid moderate exposure to fumes, odors, dusts, gases and poor ventilation. (R. at 102, 105.)

Based on the above, I find that substantial evidence exists to support the ALJ's

-15-

finding with regard to Kiser's residual functional capacity. I also find no merit in Kiser's argument that the ALJ erred by citing records in his decision which are not contained in the transcript. (Plaintiff's Brief at 5-6.) The records Kiser argues were not in the record are found in the record. (R. at 255-59, 270.)

*IV. Conclusion*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted, Kiser's motion for summary judgment will be denied, and the Commissioner's decision to deny benefits will be affirmed.

An appropriate order will be entered.

DATED: This 22nd day of July, 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE